# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MEJIA CASTILLO, | ) 1:11-cv-01654 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Jesus Mejia Castillo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. (*See* Docs. 3 & 7.)

1

# FACTS AND PRIOR PROCEEDINGS[2]

In October 2007, Plaintiff filed applications for benefits, alleging disability on two different dates: January 4, 2007 and July 18, 2007. *Cf*. AR 110-113 to AR 114-118. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 58-67, 73-76. ALJ John Heyer held a hearing and issued an order denying benefits on March 16, 2010, finding Plaintiff was not disabled. AR 16-23. Thereafter, on August 1, 2011, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Heyer held a hearing on January 20, 2010, in Bakersfield, California. Plaintiff appeared and testified. He was represented by attorney James Yoro. Vocational Expert ("VE") Kenneth Ferra also testified. AR 30-49.

Plaintiff was born January 22, 1968, and was forty-one years old on the date of the hearing. He has a driver's license. AR 33.

Plaintiff last worked on January 7, 2007, for California Closets as a closet installer, and held that position for about a year and a half before being laid off. AR 33, 35. Prior to that position, he has worked making pallets, as a head custodian, in the oil fields and in construction, and has also worked in the dairy industry. AR 33-35. After being laid off from California Closets, Plaintiff did not look for work because he feels a lot of pain in his feet and legs. AR 36.

While working in the oil fields, Plaintiff suffered an accident. He has back and leg pain. AR 36-37. Following that injury, Plaintiff had surgery on his lower back, completed rehabilitation and eventually returned to work. AR 41. His feet began hurting about two years after that accident, and the doctor has explained that the pain in his feet "comes down from [his] back." AR 36; *see also* AR 41. Plaintiff also has shoulder pain. AR 37. While at California Closets, he felt some back pain, but the leg, shoulder and foot pain came later. AR 37.

Treatment for his pain has consisted of injections, prescription medications and "an apparatus that stimulates" his legs. He has not received physical therapy. AR 37. The pain

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

medications help but do not remove the pain completely.  AR 38.  Additionally, the medications make him feel "out of it" and affect his stomach.  AR 43.  Plaintiff began pain management about a year ago.  AR 42.  Neither the spinal cord stimulator nor the injections have improved his condition so that he could return to work.  AR 42.

Plaintiff does not believe he can return to work because his back and feet hurt a lot.  He feels the pain constantly.  AR 42-43.  As a result, he lies down twice a day for about forty-five minutes to an hour.  AR 43.

When asked what he did during the day, Plaintiff replied that he takes his teenage children to school and sometimes helps his wife with the dishes or cooking.  He can grocery shop.  He does not vacuum, but will sweep once in a while.  His son mows the lawn.  AR 38.  Once in a while he will garden or use the computer to play games for twenty to thirty minutes.  AR 39.  He can lift ten to fifteen pounds and can walk for a half an hour before needing to sit down.  AR 39.  He can stand for about fifteen minutes, and can sit for a half hour to forty-five minutes before needing to stand.  He moves around a lot, alternating about every half hour.  AR 40.

VE Ferra described Plaintiff's past work as a cabinet installer, pallet maker, oil field worker, custodian and dairy supervisor.  AR 44.

In a hypothetical question posed by the ALJ, the VE was asked to assume a hypothetical person of the same age, education and work experience as Plaintiff, who could lift twenty pounds, and who could alternate between sitting, standing, and walking in an eight-hour workday (sit-stand option).  The VE indicated that such an individual would be unable to perform Plaintiff's past work.  AR 44-45.  However, and assuming the individual spoke only Spanish, VE Ferra indicated that the individual could perform other work in the economy.  Specifically, the individual could perform the work of an assembler, DOT[3] 712.687-010, with approximately 1,200 position in California, reduced by eighty percent to accommodate the sit-stand option.  Further, the VE indicated the individual could perform the work of another type of assembler,

---

[3]"DOT" refers to the Dictionary of Occupational Titles.

DOT 734.687-018, with approximately 2,700 positions in California, reduced by eighty percent to accommodate the sit-stand opinion. Next, VE Ferra indicated such an individual could perform the work of a nut sorter, DOT 521.687-086, with approximately 1,700 positions available in California, again reduced by eighty percent to accommodate the sit-stand option. Finally, the VE indicated the foregoing numbers multiplied by ten provided the national figures. AR 45-46.

**Medical Record**

The entire medical record was reviewed by the Court. AR 182-388. The medical evidence will be referenced below if necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 16-24.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2007. AR 18. Further, the ALJ identified back pain, a history of lumbar fusion at L3 to S1, and plantar fasciitis as severe impairments. AR 18. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 19.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the ability to lift twenty pounds and to complete a full eight-hour workday except that he must be allowed to alternate between sitting and standing as needed; he is unable to communicate in English. AR 19-21.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of an assembler and nut sorter. AR 22-23. Therefore, the ALJ found Plaintiff was not disabled. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

### *The ALJ's Findings Regarding Other Work*

Plaintiff contends the ALJ erred by finding that he was capable of performing other work because there are an insignificant number of other jobs available in the regional or national economy to facilitate his successful adjustment to other work. (Docs. 15 & 20.) Defendant contends however that the ALJ did not err because he relied upon the testimony of the VE, and further, that any failure by the ALJ to expressly reference two different assembler positions in his written findings is harmless error.

**1. VE Ferra's Testimony**

After identifying and describing Plaintiff's past relevant work, the following colloquy occurred:

> [ALJ]: Okay, now I'd like you to respond to a hypothetical question. I'd like you to consider an individual who's able to lift 20 pounds, alternate between sitting, standing, and walking, in order to complete a full eight-hour day. So basically, the sit-stand option. Would such an individual be able to perform any of the claimant's past work?
> [VE]: No, your honor.
> Q. Are there any other occupations such an individual could perform?
> A. Is language in issue in this hypothetical, your honor?
> Q. Yes, let's include that he speaks Spanish only?
> A. Then there would be some positions that would be compatible with the sit-stand option. Assembly, 712.687-010, approximately 1,200 in California. However, I would reduce that by 80% to accommodate the sit-stand option. Assembler again, different assembler position. 734.687-018, approximately 2,700 in California, again, reduction of 80% for the sit-stand option. Nut sorter, 521.687-086, approximately 1,700 in California, and again, a reduction of 80% for the sit-stand option. And those numbers would be reflected approximately 10 times nationally.
> ALJ: Mr. Yoro, did you have any questions for Mr. Ferra?
> ATTY: Yes.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Q. With respect to the numbers that you gave the 1,200 for the first assembler and the 2,700 for the different assembler and the 1,700 for the nut sorter, are those at the reduced numbers or are those are the numbers - -
> A. No, those are the numbers in California, and I'm reducing those numbers by 80%.
> Q. Okay. So do you have to apply an 80% reduction to the 1,200 - -

---

[4] The Court is not troubled by an occasional mistake in any party's brief. However, both Plaintiff's opening and reply briefs contained a great many errors, both in calculation and in content. (*See* Doc. 15 at 3:8-10, 6:9-13 [calculation errors] & Doc. 20 at 3:10-12 [referencing DOT number that directly conflicts with assertion on previous page].) Counsel should be careful to proofread written product for accuracy to avoid unintended misstatements of the record, fact or law.

6

```
            A. Correct.
            Q, - - get the remaining amount.
            A. Correct.
            Q. And the same is true for the other two?
            A. Correct.
```

AR 44-46.

### 2. ALJ Heyer's Relevant Findings

ALJ Heyer's findings at step five state, in relevant part:

> Mr. Ferra was asked to respond to a hypothetical question concerning an individual who is able to lift 20 pounds and can complete a full eight hour workday, if allowed to alternate between sitting and standing, as needed. He was also asked to take into consideration that such an individual is unable to communicate in English. Mr. Ferra stated that such an individual would be unable to perform any of the claimant's past relevant work. He identified the following occupations that such an individual could perform: assembler (DOT 712.687-010) 1,200 in California and nut sorter (DOT 521.687-086) 1,700 in California. Mr. Ferra stated that the number of these jobs needs to be reduced by 80% to take into consideration the sit/stand option. He said that there are 10 times as many jobs available in the national economy.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . ..

AR 22-23.

### 3. Analysis

At step five of the sequential analysis, if the impairment prevents the claimant from performing his or her past work, a determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy is necessary; if so, the claimant is not disabled and the analysis ends. 20 C.F.R. §§ 404.1520(a)-(e) & 416.920(a)-(g). At this stage of the analysis, the ALJ should consider the claimant's RFC and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f) & 416.920(f). The Commissioner bears the burden of establishing the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). The work must exist in significant numbers in the national economy. 20

C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of the Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012). However, that Court has held that 1,266 jobs regionally is a "significant number." *Id.* (citing *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989)); *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in state sufficient); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs in local area sufficient). It has also held that 64,000 nationally is a "significant number." *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs regionally & 64,000 nationally are significant numbers); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 824 (C.D. Cal. 2007) (17,382 jobs nationally is a "significant number"). In *Beltran*, the Ninth Circuit held that a mere 135 regional jobs and 1,680 national jobs are "very rare" numbers and thus not "significant" within the meaning of the Social Security Act. *Beltran v. Astrue*, 676 F.3d at 1206. If the number of jobs available either regionally or nationally is "significant," an ALJ's decision must be upheld. *See* 42 U.S.C. § 423(d)(2)(A); *Beltran,* 676 F.3d at 1206.

Here, VE Ferra testified as to three representative occupations available to Plaintiff given the RFC: an assembler position (DOT 712.687-010[5]), a second assembler position (DOT 734.687-018[4]), and a nut sorter (DOT 521.687-086). AR 45. The VE gave the number of such

---

[5]More particularly, this occupational title is "Assembler, Plastic Hospital Products." The position is described as follows:
  Performs any combination of following tasks to assemble and package disposable plastic hospital products, such as hypodermic syringes, catheters, and intravenous apparatus: Reviews work order and selects component parts to assemble specified product. Fits and assembles parts together, using adhesives and handtools, or heats, bonds, and welds parts together, using automatic equipment. Visually inspects products for defects, verifies conformance to specifications, and rejects defective products. Packages assembled product into plastic bag or other container and seals package, using sealing machine. Packs sealed product and instructional information into cartons, and labels cartons with identifying information. May stack cartons in sterilization chamber, seal chamber, and turn valves to admit gas into chamber to sterilize product.

[4]This occupational title is "Assembler (button & notion)" and states "Inserts paper label in back of celluloid or metal advertising buttons and forces shaped stickpin under rim."

positions available in California: 1,200, 2,700 and 1,700, respectively.  Each number was to be reduced by eighty percent to accommodate the sit-stand option required by the ALJ's RFC.  AR 45-46.  Accordingly, in California, there were 240, 540 and 340 available positions, respectively, for a total of 1,120 positions.  By multiplying those figured by ten, the following national figures are obtained: 2,400, 5,400 and 3,400 available positions, respectively, for a total of 11,200 positions.  These numbers are significant numbers.  *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d at 1479.

Because the ALJ's written findings do not expressly reference the second assembler position testified to by VE Ferra, Plaintiff argues that the ALJ has rejected that position.  Curiously however, Plaintiff then cites to authority holding that in order to reject an expert's opinion, an ALJ must make specific and legitimate findings.  (Doc. 20 at 2.)  Here, the ALJ's findings omit reference to one of two assembly positions.  The ALJ certainly did not reject the VE's testimony because he did not provide reasons for doing so.

Plaintiff contends it is "mere conjecture" to argue, as the Commissioner does, that the ALJ's failure to expressly reference one of the two assembler jobs is the result of judicial oversight.  Plaintiff's assertion however is unpersuasive.  In fact, although the ALJ's findings do not reference one of the two assembler positions identified by VE Ferra, he does expressly state that he relied upon the VE's testimony in making his determination: *"Based on the testimony of the vocational expert, the undersigned concludes that*, . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers . . .."  AR 23, emphasis added.  Thus, it seems an oversight is indeed likely.  Moreover, Plaintiff's argument would essentially require procedural perfection from the administrative proceedings below.  There is simply no plausible reason for the ALJ's omission of reference to the second assembler position.  A remand to correct this omission would elevate form over substance and consume already scarce administrative resources.

Assuming for the sake of argument however that the ALJ intentionally ignored the second assembler position, reversal is not required.  For even if there were only 580 positions (240

1 [DOT 712.687-010] & 340 [DOT 521.687-086]) in California available, and correspondingly, 5,800 positions nationwide, this Court finds those numbers to be significant.[5]  The regional figure of 580 here is more than three times that of the 135 found to be insufficient in *Beltran*.  The same can be said of the national figures: 5,800 here is more than three times the 1,680 in *Beltran*.  *See Beltran v. Astrue*, 676 F.3d at 1206-1207.

Notably too, unlike the surveillance system monitor job at issue in *Beltran*, here the position at issue is an assembler position.  It seems to this Court that an assembler is hardly a "very rare" job.  *Beltran v. Astrue*, 676 F.3d at 1206.  In fact, such a finding is supported by the fact the DOT carries dozens, if not more than a hundred, assembler job variations.  *See, e.g.*, http://www.occupationalinfo.org/dot_a3.html.  Certainly even the applicable assembler positions that comport with the ALJ's RFC finding here are not "very rare" in comparison to the position of a surveillance system monitor - there is only one such position (DOT 379.367.010).  *See* http://www.occupationalinfo.org/dot_s6.html.

Finally, harmless error applies in the Social Security context.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless" [citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)]).  This Court finds that ALJ Heyer's omission of reference to the second assembler position is harmless error.

In sum, the ALJ's findings are supported by substantial evidence and are free of legal error.

//
//
//
//
//
//
//

---

[5] The statute indicates that either the regional number or the national number can be used to determine a "significant number of jobs."  See 42 U.S.C. § 423(d)(2)(A); *see also Beltran*, at 1206.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Jesus Mejia Castillo.

IT IS SO ORDERED.

Dated:   **September 20, 2012**              /s/ **Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE